UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **DETRICK CULLUM,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-1279 |
| | ) |
| **WEXFORD HEALTH SOURCES, INC.,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging that Defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Kurt Osmundson, and Brittany Miller were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Now before the Court is Defendants' Motion for Summary Judgment, asserting that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e) (Doc. 22); Plaintiff's Response (Doc. 26); and Defendants' Reply (Doc. 27). For the reasons stated below, summary judgment is granted in favor of Defendants.

## MATERIAL FACTS

During all relevant times, Plaintiff was an inmate in the custody of the Illinois Department of Corrections ("IDOC"). Defendant Wexford is a Florida corporation that provides certain medical services to inmates within the IDOC. Defendant Osmundson, who is a physician, and Defendant Miller, who is a nurse practitioner, are licensed in Illinois and provide medical care to inmates within the IDOC.

In his Complaint, Plaintiff alleged Defendants Osmundson and Miller were deliberately indifferent to his COVID-19 symptoms from November 2020 through June 2021 at Illinois River Correctional Center in violation of the Eighth Amendment. (Docs. 1 and 5). Plaintiff also alleged

1

that Defendant Wexford was deliberately indifferent to his serious medical condition based on its alleged cost-cutting policy or practice which reduced staff and delayed any consultation with a doctor. (Doc. 5 at p. 2).

The IDOC has a detailed grievance procedure, which inmates are required to follow before filing suit. *See* 20 Ill. Admin. Code § 504.810.

Plaintiff filed grievance #20-2943 on December 5, 2020, and grievance #20-2944 on December 18, 2020. (Doc. 22-1 at pp. 13-20). Both grievances concerned COVID-19, but Plaintiff complained of correctional officers' conduct and made no mention of Defendants. *Id.*

On December 31, 2020, Plaintiff filed grievance #20-3044 concerning COVID-19. *Id.* at p. 24. This grievance did not mention Defendants and was never appealed.

On January 2, 2021, Plaintiff filed grievance #20-3042 and #20-3043 concerning COVID-19. *Id.* at pp. 6-12. He again complained of correctional officers' conduct and made no reference to Defendants. *Id.*

On January 12, 2021, Plaintiff filed grievance #20-3168 concerning COVID-19. *Id.* at pp. 21-23. This grievance was never appealed and did not name or identify Defendants. *Id.*

On January 18, 2021, Plaintiff submitted emergency grievance #20-3169 to the Chief Administrative Officer ("CAO"). (Doc. 26-1 at pp. 2-3). Plaintiff named Defendant Miller and complained about a lack of treatment for his COVID-19 symptoms. *Id.* Plaintiff asserts the CAO expedited the grievance as an emergency on January 26, 2021. (Doc. 26 at p. 7, ¶ 2). Defendants state there is no evidence that the CAO deemed his grievance an emergency because the grievance form was not numbered with an "E" grievance number. (Doc. 27 at p. 2, ¶ 2). Defendants assert that whether the grievance was handled as an emergency is irrelevant, however. *Id.*

Plaintiff asserts the Health Care Unit Administrator ("HCUA") responded to his January 18, 2021 grievance on January 28, 2021. The response stated: "Per Meaker HCUA, 'offender seen for physical exam on 1/23/21 and chest x-ray ordered. X-ray completed 1/25/21 and pending report, flu.' Grievance is moot." (Doc. 26-1 at p. 2). It is undisputed that the HCUA responded to the grievance; however, it is not clear from Plaintiff's exhibit when the HCUA responded. *Id.* Defendants assert that the response date is immaterial. (Doc. 27 at p. 2, ¶ 3).

Plaintiff states he appealed the January 18, 2021 grievance to the CAO. (Doc. 26 at p. 7, ¶ 4; Doc. 26-1 at p. 1). Defendants dispute that Plaintiff appealed his grievance because, other than his self-serving affidavit, Plaintiff failed to provide any evidence that he submitted an appeal or explain when and how he appealed his grievance. (Doc. 27 at p. 2, ¶ 4).

Plaintiff also states he resubmitted his January 18, 2021 grievance to the CAO. (Doc. 26 at p. 7, ¶ 5; Doc. 26-1 at p. 1). Defendants dispute this and argue that there is no evidence to support this assertion. (Doc. 27 at p. 3, ¶ 5). Defendants also state this is immaterial, as "resubmitting" grievances to the CAO is not required by the IDOC's grievance procedure. *Id.*

On March 8, 2021, Plaintiff filed grievance #21-0287 concerning COVID-19. (Doc. 22-1 at p. 25). He complained of correctional officers' conduct and made no mention of Defendants. *Id.*

Plaintiff asserts that he filed a second emergency grievance with the CAO against Defendants Wexford, Osmundson, and Miller regarding the lack of treatment for COVID-19 on May 21, 2021. (Doc. 26 at p. 8, ¶ 9; Doc. 26-1 at pp. 4-5). Defendants argue that there is no evidence the grievance was filed prior to the document being mailed directly to the Administrative Review Board ("ARB"), who stamped the grievance as received on June 9, 2022. (Doc. 27 at p. 4, ¶ 9). Defendants argue even if Plaintiff submitted an emergency grievance on May 21, 2021, he did not exhaust the grievance in accordance with the IDOC's grievance procedure. *Id.*

Plaintiff claims he inquired with his counselor about the May 21, 2021 grievance after months of no response and resubmitted the grievance to the CAO. (Doc. 26 at p. 8, ¶ 10). Defendants assert there is no evidence that this occurred, and it is immaterial because Plaintiff did not exhaust this grievance. (Doc. 27 at p. 4, ¶ 10).

On January 27, 2022, Plaintiff filed grievance #22-0464 concerning COVID-19. (Doc. 22-1 at pp. 1-5). This grievance was not successfully appealed and did not name Defendants. *Id.*

On May 24, 2022, Plaintiff sent a letter to the ARB regarding his January 18, 2021 and May 21, 2021 grievances. (Doc. 26 at p. 7, ¶ 6, p. 8, ¶ 12; Doc. 26-2 at pp. 1-2). In his letter, Plaintiff asked the ARB to "force" the administration to answer the grievances. (Doc. 26 at p. 8, ¶ 12; Doc. 26-2 at pp. 1-2).

Defendants admit Plaintiff sent the ARB a letter on May 24, 2022, but they dispute that Plaintiff filed a grievance on May 21, 2021. (Doc. 27 at p. 5, ¶ 12). In any event, Defendants argue that this is immaterial because sending a letter to the ARB is not in compliance with the IDOC's grievance procedure. *Id.*

On June 10, 2022, Ryan Kilduff responded to Plaintiff's letter. (Doc. 26-2 at p. 2). The response indicated that Plaintiff was not in compliance with the grievance procedure and additional information was required to exhaust his administrative remedies. *Id.*

On August 20, 2022, Plaintiff was transferred from Illinois River Correctional Center to Danville Correctional Center. (Doc. 26 at p. 8, ¶ 14). Plaintiff claims he exhausted his "available" administrative remedies regarding the May 21, 2021 grievance. *Id.* at ¶ 15.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

4

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's "favor toward the nonmoving party does not extend to drawing 'inferences that are only supported by speculation or conjecture.'" *Id*. In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted). Plaintiff is the non-moving party, and the evidence and all reasonable inferences are viewed in the light most favorable to him. *Anderson*, 477 U.S. at 255.

**EXHAUSTION STANDARD**

The Prison Litigation Reform Act ("PLRA") prohibits prisoners from filing lawsuits pursuant to § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies under § 1997e is a condition precedent to suit, *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 2009), and applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion means completing all stages of the process in a timely and proper manner.

*Id*. at 1024. An inmate cannot satisfy the requirements by filing an untimely or otherwise procedurally defective grievance or appeal. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). If the inmate fails to exhaust before filing suit, the court must dismiss the suit. *See Jones v. Bock*, 549 U.S. 199, 223 (2007); *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

Plaintiff was required to follow the grievance procedures described in the regulations provided by the IDOC. *See* 20 Ill. Admin. Code § 504.800, *et seq*. In Illinois, inmates may utilize (1) a normal, non-emergency grievance procedure, or (2) an emergency grievance procedure. Under the non-emergency procedure, inmates must follow a three-step process.

First, the inmate must submit a grievance to his or her counselor "within 60 days after the discovery of the incident" giving rise to the grievance, explaining details regarding "each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." § 504.810(a), (c). If the names of each person are unknown, then "the offender must include as much descriptive information about the individual as possible." *Id.* at (c).

Second, if the inmate is dissatisfied with his counselor's response, he must file the grievance with the grievance officer for further review, who will then make a report of findings and recommendations in writing to the CAO. §§ 504.810(a), 504.830(e).

Finally, if the grievance officer denies the grievance and the CAO concurs with that decision, the inmate must appeal to the ARB within thirty days, attaching the grievance officer's report and the CAO's decision to the appeal. § 504.850(a). The ARB will submit a written report of its findings and recommendations to the Director, who will make a final determination of the grievance within six months, when reasonably feasible under the circumstances. *Id*. at (d)-(e).

Under this normal, non-emergency procedure, the inmate's administrative remedies are exhausted when he receives a final determination from the ARB and the Director. *Id*. at (e).

A different procedure exists for emergency grievances. Inmates may submit emergency grievances directly to the CAO. § 504.840. The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* at (a). If the CAO classifies the grievance as an emergency, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." *Id*. at (b). After receiving a response from the CAO, if the inmate believes that his problem or complaint has not been resolved, he may appeal in writing to the ARB. § 504.850(a). When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." § 504.850(f).

Failure to exhaust administrative remedies is an affirmative defense; the defendants have the burden of proving the inmate had available remedies he did not utilize. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A lawsuit filed by a prisoner before he exhausted his administrative remedies must be dismissed because the district court lacks the discretion to resolve the claim on the merits. *Perez*, 182 F.3d at 535.

**ANALYSIS**

Among the many grievances Plaintiff filed concerning COVID-19, only the January 18, 2021 and May 21, 2021 grievances mention Defendants. As a result, the Court will focus its analysis on these grievances. *See* § 504.810(c); *Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir. 2013) (plaintiff failed to exhaust where he did not identify defendants "by name or inference").

Plaintiff claims he exhausted his administrative remedies because he submitted the January 18, 2021 and May 21, 2021 grievances to the CAO for emergency review. (Doc. 26 at p. 11).

The records indicate that the January 18, 2021 grievance was filed and addressed by the facility in January 2021. (Doc. 26-1 at p. 2). There is no evidence that it was deemed an emergency or that Plaintiff appealed the grievance. (*See* Docs. 26-1 and 26-2). In his affidavit, Plaintiff asserts that he "resubmitted this grievance and inquired of it to the Warden and counselor," but he does not provide any information about how he appealed it or when. (Doc. 26-1 at p. 1).

Plaintiff claims he submitted a grievance on May 21, 2021, but this grievance is unnumbered. There is no record of this grievance being filed prior to the Plaintiff mailing the grievance to the ARB on May 24, 2022. (Doc. 26-1 at pp. 4-5). The ARB responded to the grievance on June 10, 2022, and indicated Plaintiff failed to comply with the IDOC grievance procedure. (Doc. 26-2 at p. 2). The ARB instructed Plaintiff to "[p]rovide [his] original written Offender's Grievance, Doc. 0046, including the counselor's response, if applicable" and to "[p]rovide a copy of the Response to Offender's Grievance, Doc. 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely." *Id.*

Rather than attempting to comply with the procedure and exhaust his remedies, Plaintiff instead filed suit on August 26, 2022, approximately two months later. (Doc. 1). This is a clear violation of the PLRA. An inmate must fully comply with all procedures and properly exhaust any and all appeals in order to exhaust. *Pozo*, 286 F.3d at 1024. When prison officials instruct a prisoner how to proceed through the administrative process, the prisoner must follow those instructions. *See Dole*, 438 F.3d at 811 (suggesting that an inmate fails to exhaust administrative remedies when prison officials give an inmate instructions on how to proceed and the inmate ignores or improperly follows those instructions even if "prison officials were responsible for the mishandling of his grievance"); *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (holding that plaintiff failed to exhaust his administrative remedies because he "ignored both of the ARB's

8

instructions concerning the form of his response"); *McCoy v. Gilbert*, 270 F.3d 503, 508 (7th Cir. 2001) (holding that plaintiff failed to exhaust his administrative remedies because he "had the opportunity to exhaust, but he simply chose not to"). The Court finds that Plaintiff failed to exhaust his administrative remedies on his claims against Defendants. *See Pozo*, 286 F.3d at 1023. Therefore, Defendants are entitled to summary judgment.

**IT IS THEREFORE ORDERED:**

1) Defendants' Motion for Summary Judgment [22] is GRANTED based on Plaintiff's failure to exhaust his administrative remedies. Defendants are DISMISSED without prejudice. Plaintiff takes nothing. The parties will bear their own costs. The Clerk is directed to enter judgment and close this case.

2) Although this case has been dismissed, Plaintiff remains responsible for the reminder for the $350 filing fee. (d/e 8/26/2022).

3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a). A motion for leave to appeal *in forma pauperis* must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.

ENTERED: 10/24/2023

                                              s/ James E. Shadid
                                              James E. Shadid
                                              United States District Judge